WILLIAM BARRY, Respondent, *v.* ORSON COLVILLE et al.,
Impleaded, etc., Appellants.

A conveyance, absolute upon its face, may be shown by parol or extrinsic
evidence to be in reality merely a security, and to that end it is not
essential to show fraud or mistake in the inception of the instrument.

Plaintiff, being the owner of several letters patent for certain inventions,
and being indebted to defendants, entered into a contract with them by
which, to secure the payment of that indebtedness and of certain advances
agreed to be made by them to him, he assigned to them two-thirds of his
interests in said letters patent and the invention covered thereby; the
said indebtedness and advances to be paid out of plaintiff's share of the
profits and proceeds of sales of the patented articles. Defendants had
the right under the contract to terminate it at any time, they, however,
to retain their interest until they were fully paid, and upon such payment
they agreed to re-assign. In an action to compel a re-assignment and for
an accounting it appeared that plaintiff, before the termination of the
contract, executed to defendants, without consideration, a deed, by its
terms conveying to them, for a nominal consideration, two-thirds of his
interest in one of the letters patent. *Held*, the evidence justified a find-
ing that the transfers, both the deed and the assignment, were intended
merely as security; and that plaintiff was entitled to a reconveyance,
upon payment being made to defendants as specified in the contract,

By the interlocutory judgment an accounting was ordered. On the hear-
ing before the referee it appeared that plaintiff at defendants' request
and upon their promise to pay him for his time, performed labor in per-
fecting improvements to one of the patented inventions. *Held*, that
plaintiff was properly allowed upon the accounting the value of his labor.

(Argued December 4, 1891; decided December 15, 1891.)

APPEAL from judgment of the General Term of the
Supreme Court in the fourth judicial department, entered
upon an order made July 29, 1889, which modified and
affirmed as modified an interlocutory judgment in favor of
plaintiff entered upon the decision of the court on trial at
Special Term, and from judgment of the same General Term
entered upon an order made February 3, 1891, which modified
and affirmed as modified a final judgment in favor of plaintiff
entered upon an order confirming the report of a referee, to
whom it was referred by the interlocutory judgment, to take
an accounting between the parties.

Plaintiff brought this action to compel the defendants to reassign to him certain interests which they had acquired in letters patent issued to him for inventions, etc., and for an accounting between the parties.

The plaintiff had invented an improvement in door hangers, in roller skates, a machine for stripping willows and a post-office cancelling apparatus. He was somewhat in debt to the defendants, and, in October, 1884, to secure to them the payment of that indebtedness, as well as to make a provision in the future for a supply of goods, etc., for his support and for some moneys to perfect a machine, he entered into a contract with the defendants, who were engaged in the grocery business. By this contract plaintiff assigned to the defendants two-thirds of his interest in his inventions or patents, and the defendants agreed to furnish funds for manufacturing a certain trial machine, and to furnish to plaintiff goods and provisions " so long as they shall be satisfied with the success of the manufacturing and carrying forward the business under said inventions as hereinafter specified and limited, together with ten dollars per month for house rent and necessary fuel for said time." The contract then goes on to provide that out of plaintiff's share of the profits and proceeds of sales should be paid his past obligations and his indebtedness to defendants, as it may accrue during the continuance of the contract. It is then finally provided that in case the defendants become satisfied after three months " that it will not be profitable for them to continue their interest in this agreement in and to the manufacturing of the articles under said inventions, or in the performance of their obligations, they shall have the right to terminate the agreement, and the same shall become inoperative and void, but shall retain their interest and claims therein till they shall be fully paid their said indebtedness up to such time as they shall terminate this agreement, but they shall, upon payment to them of their said indebtedness, reassign their said interest in said inventions " to the plaintiff. Subsequently, the time to terminate the agreement was extended by agreement to July 1, 1885. In the month of April following the

agreement, plaintiff executed and delivered to the defendants a patent deed conveying to them two-thirds of his interest in the patent for door hangers, which was recorded in the patent office. No consideration was given for this deed, and that expressed in its language was nominal. On July 1, 1885, the defendants refused to continue the arrangement under the contract, and they subsequently refused to reassign the patent interests, though full satisfaction of their demands and of plaintiff's indebtedness was offered them.

The trial court decided that the transfers of patent interests by plaintiff were for a security for the repayment of plaintiff's indebtedness as specified in the contract, and upon such repayment being made to defendants, they should reconvey to plaintiff the interests in his patents, acquired under contract or deed, and the court directed an accounting to be had before a referee as to the matters covered by the contract, and, as well, as to services performed by plaintiff at defendant's request. Upon that reference a balance was found resulting in favor of the plaintiff, after crediting defendants with plaintiff's debt to them for moneys advanced and goods furnished, and charging them with the value of certain services rendered by plaintiff and with royalties received by them.

*M. M. Waters* for appellants. The final judgment can only be supported upon the theory that the $1,183.65 deducted was an expenditure by defendants within the scope of the provisions of the contract of October 2, 1884. (Code Civ. Pro. §§ 1010, 1021, 1231; *McNaughton* v. *Osgood*, 114 N. Y. 574; *Village of Palmyra* v. *Wynkoop*, 53 Hun, 83.) The deed of April 13, 1885, acknowledges a valuable consideration and belongs to that class of evidence which falls within the rule prohibiting parol evidence for the purpose of destroying the effect and operation of the deed. (*McCrea* v. *Purmert*, 16 Wend. 460; Devlin on Deeds, § 834.) The deed was absolute and vested in defendants the absolute estate in the property conveyed without a defeasance. (*Taylor* v. *Baldwin*, 10 Barb. 582.) Whether the parties be deemed merely as tenants

in common or mortgagor and mortgagee, the rule with regard to expenditures in improving the property is as follows, to wit.: As to mortgagee, "if he has got the consent of the mortgagor, or has given him notice in which he acquiesces, then he may be allowed for the sums of money which he has laid out in increasing the value of the property." (*Wetmore* v. *Roberts*, 10 How. Pr. 51; Story's Eq. Juris. §§ 655, 1016, 1234, 1238; *Prentis* v. *Jansen*, 79 N. Y. 478; *Green* v. *Putnam*, 1 Barb. 500; *Michael* v. *Delaye*, 17 N. Y. 80.) Equity will not deprive the defendants of both the expenditures and of the improvements resulting therefrom at the suit of either a co-tenant or mortgagor. (Story's Eq. Juris. 1016.)

*C. G. Baldwin* for respondent. A witness was allowed to state that he drew the deed in question and was employed by the plaintiff to do so, but his evidence as to the communications made to him by the plaintiff was excluded on the ground that it was privileged under section 835 of the Code of Civil Procedure. Such ruling was not error. (*Root* v. *Wright*, 84 N. Y. 72; *Williams* v. *Fitch*, 18 id. 550; *Yates* v. *Olmstead*, 56 id. 632; *Loder* v. *Whelpley*, 111 id. 239; *Westover* v. *Æ. L. Ins. Co.*, 99 id. 56.) The defendants' point that there are no written findings, or any settlement of the final judgment signed by the judge, as required by section 1231 of the Code of Civil Procedure, and that, therefore, the judgment is unsupported, is not well taken. (Code Civ. Pro. §§ 1018,1019, 1022.)

GRAY, J. The facts, which have been stated, sufficiently exhibit the positions of the parties and enable us to review the two questions which the appellants' counsel has argued here. He says that the patent deed, conveying an interest in the patent described, was absolute, and that the evidence did not justify a finding that it was for security only. His argument is, in effect, that as no fraud was found, or practiced, in respect to its execution, parol evidence could not destroy the absolute character of the conveyance and equity was powerless to attach to it a defeasance. If the deed of this particular patent inter-

est stood alone and there was no light cast upon it, in which the intentions and understanding of the parties to it could clearly be read, of course, it would stand as an absolute conveyance. But where, as here, the court had before it the circumstances connected with its making and the conceded absence of any new consideration for it, it was proper and right to consider the facts which showed it to be for a security and to adjudge accordingly. It is a perfectly well settled rule in equity that a conveyance, absolute upon its face, may be shown by parol or extrinsic evidence to be, in reality, merely for a security, and to that end the presence of some fraud or mistake in the inception of the instrument is not at all essential to be shown. That is an ancient doctrine in equity, which has come down to present times and to which the courts of this state are fully committed in many decisions. For a fuller discussion of the doctrine, reference may be had to Judge ALLEN's opinion in *Horn* v. *Keteltas* (46 N. Y. 605).

In the present case the court had sufficient evidence before it upon which to find this deed to have been executed and delivered merely in furtherance of the agreement, made in the previous October, between the parties, and to be in the nature of a security. The finding made in that respect is conclusive upon us. The contract defined the relations of the parties and their respective rights during a period of time, which had not expired when this patent deed was made. Its provisions gave an absolute ownership to the defendants in the patent interests, to the extent described, while the contract lasted; but when, upon the default or the election of the defendants, it ceased to be operative, its provisions required the defendants to reassign their interests, or, at furthest, to retain them only so long as the plaintiff's indebtedness was undischarged.

The deed given during the running of the contract is unexplained, unless by the fact that it completed the assignment of the interest in the patents which the contract had undertaken to transfer. It was delivered because of the contract, and its operation was limited by the understanding of the parties, as evidenced by the testimony and the existing agreement. If, by

the force of their agreement, the ownership of the patent inter-
ests by the defendants was, in a certain contingency, to cease
and the plaintiff was to have them back, obviously this deed
would be controlled by the agreement. It would require
proof of some other agreement, and of some new consideration,
pending the running of the contract, to give to the patent
deed a necessary operation independent of the terms of the
contract. Its validity is not affected, whether it is considered
as an absolute conveyance of patent rights, or as a mortgage
upon them. We will not, therefore, disturb the decree
of the court adjudging as to the nature of contract and
deed, and that the defendants should reassign to the plaintiff
the patent interests they had acquired, upon a satisfaction of
whatever obligations he might be shown to be under to
them, and as a security for which the contract was intended
to operate.

But the appellants further insist that it was error for the
court to charge the defendants, upon the accounting, with the
value of the plaintiff's labor. That labor, as it was correctly
found, was performed in perfecting improvements upon the
roller skate invention. It was performed, as there was evi-
dence to show, at the defendants' request subsequently to the
making of the contract and the request was only complied
with upon the defendants promising to compensate plaintiff
for his time spent. The terms of the contract did not
require of him to do this particular work, and there was no
reason why he should not agree with the defendants to work
especially for them, in reference to any one of the particular
inventions (which seems to have been the case here) and that
he should be paid for that work as an independent transaction,
or arrangement. The appellants, however, find fault with the
decision of the court below, on the ground that the expendi-
tures were upon the property of parties having joint interests
in it and that plaintiff, as one of the parties, should not, there-
fore, be allowed a credit for it. In support of this view the
appellants' counsel advances arguments based upon the rule
governing the relations of tenants in common, or of mort-

gagor and mortgagee. But that line of argument is not applicable to the present case; inasmuch as the court has found, upon sufficient evidence, that there was a special hiring of the plaintiff by the defendants to do the particular work in question. It was, therefore, not like a case of work done by a joint owner, or by mortgagee, in the improvement of the property, in which there was a joint interest. This liability to pay plaintiff for his services arose upon their rendition and was, in a certain sense, as they were not called for by the contract, outside of the contract. He was entitled to be paid if the contract continued, and when it terminated such payment was a proper charge against the defendants, in stating the account between them and him, to ascertain what, if any, claim they had upon the patent interests as security for the plaintiff's indebtedness to them.

The appellants allege no other error and the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed. _____